UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHANNON DONALDSON | : | |
|     Plaintiff, | : | |
| | : | No. 3:18-CV-01713 (VLB) |
| v. | : | |
| | : | |
| COCA COLA REFRESHMENTS | : | May 19, 2020 |
| USA, Inc. | : | |
|     Defendant. | : | |
| | : | |
| | : | |
| | : | |

<u>**Memorandum of Decision Granting in Part and Denying in Part Defendant's Motion for Summary Judgment [Dkt. 27]**</u>

Before the Court is Defendant Coca Cola Refreshments USA, Inc.'s Motion for Summary Judgment [Dkt. 27]. Plaintiff Shannon Donaldson alleges that Defendant terminated him on account of his race and in retaliation for complaining about racial harassment in violation of Conn. Gen. Stat. § 46a-60(a)(1) and (4), respectively. Defendant removed this matter from the Connecticut Superior Court for the Hartford Judicial District to this Court based on diversity jurisdiction. [Dkt. 1 (Not. of Removal).]. For reasons set forth herein, Defendant's motion for summary judgment is granted in part and denied in part.

<u>Background</u>

The following facts are taken from the Local Rule 56(a) statements of material facts and evidence cited by the parties. [Dkt. 29 (Def. 56(a)(1)]; [Dkt. 32-2 (Pl. 56(a)(2)]. The facts are undisputed unless otherwise noted. The facts are read in the light most favorable to the non-movant, Mr. Donaldson. *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court notes that the parties are largely in agreement about most of the salient facts. [1]

Plaintiff, who is Black, was hired by Defendant in 2012 and worked at Defendant's East Hartford, Connecticut warehouse. [Def. 56(a)(1) ¶¶ 1-2]; [Dkt. 9 (Def. Answer) ¶¶ 4, 7]. The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement ("CBA") between the Defendant and a labor union. [Def. 56(a)(1) ¶¶ 3]. Among the CBA's terms is a provision requiring "just cause" for a termination. [Def. Ex. B, App. 1 (CBA) Art. VII, § 1).

In November 2016, Plaintiff complained that his co-worker, Christina Fontanez said, in reference to Plaintiff, "this n----- always has my name in his mouth." [Def. 56(a)(1) ¶ 22]. Plaintiff testified that he felt threatened when Ms. Fontanez followed that statement with "You F'in N is going to get it" (sic). [Pl. Ex. 1 (Donaldson Depo.) 84:10-86:23]. Plaintiff testified that his immediate supervisor directed him to speak with Mike Grady, the distribution center manager, and he later spoke with him, and then Sue Barney in human resources, about the incident. [*Id*. at 87:06-90:11].

There is a factual dispute concerning whether Plaintiff reported Ms. Fontanez's verbal threat. Plaintiff testified that he told Mr. Grady that, "…I was called the N-word by Christina. And I told him that Alan Bozak and Curt was

---

[1] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [Dkt. 29] and Plaintiff's Opposition [Dkt. 32] by exhibit only. i.e. [Def. Ex. A] and [Pl. Ex. 2]. Citation to the Defendant's. D. Conn. Civ. L. R. 56(a) statement is applicable where the parties agree as to the fact stated

standing there when she pointed at me and said: This N will get it." (sic) [*Id.* at 88:14-88:18]. Plaintiff did not share the complaint about the verbal threat to Ms. Barney. [*Id.* at 88:19-90:02]. Mr. Grady's and Ms. Barney's declarations agree that Plaintiff complained about Ms. Fontanez's use of the racial epithet but deny that he also mentioned her verbal threat. [Dkt. 33 (Def. Repl.) Grady Decl. ¶ 5]; [Dkt. 33 (Def. Repl.) Barney Decl. ¶ 4].

While the investigation was ongoing, Plaintiff reported to Mr. Grady that Ms. Fontanez intentionally drove her car towards Plaintiff's car while exiting Defendant's parking lot. [Pl. Ex. 1 (Donaldson Depo.) at 91:02-92:24]. Mr. Grady reviewed a videotape of the parking lot and determined that there was confusion as to which car would proceed first. [Dkt. 33 (Def. Repl.) Grady Decl. ¶ 3]; [Pl. Ex. 1 (Donaldson Depo.) at 75:14-75:20].

Plaintiff also testified that he complained to Mr. Grady that Ms. Fontanez bumped into him when he was exiting the men's locker room. [*Id.* at 75:23-76:02]. Mr. Grady's declaration states that both Plaintiff and Ms. Fontanez separately complained about bumping into each other outside of the locker room and in the absence of a video of the incident, both parties were told to be more attentive to their surroundings. [Dkt. 33 (Def. Repl.) Grady Decl. ¶ 4].

In January 2017, Defendant terminated Ms. Fontanez for her use of the racial epithet. However, she was reinstated without pay a few days later in February at the urging of her bargaining agent for reasons absent from the record. [Def. 56(a)(1) ¶ 23-24]; [Def. Ex. B App. 11-12 (Fontanez 01/27/2016 termination letter, Fontanez 02/01/2016 "Last Chance Agreement")].

3

On April 24, 2017, Defendant received an anonymous complaint on its ethics and compliance hotline regarding certain conduct of Plaintiff stating, in full:

> Last week after at the end of our preshift meeting, me, Patrick, ahmed and couple of other guys was standing there waiting to hear where we have to go. Shannon was trying to show off and said watch these niggas better move out my way but he was walking towards Patrick Thomas. Patrick said I don't have to move for nobody, he was standing on the side next to ahmed. And Shannon just walked in between the 2 of them. He bumped the both of them hard. He started talking shit to Patrick, like watch who you bumping, Patrick told him watch where he's walking a, you could of went around. And Shannon just kept on. All night he was telling everyone he's a grown man he's 41 not 21, watch after work he's gonna fuck him up. Everyone was like what's his problems. Since everyone was talking about it Shannon went and told the supervisors to make it look like we was bothering him. But I went up to Jordan he said he didn't hear anything so I can write a statement if I want to, not much to do [.] (sic)

[Def. Ex. B App. 2 (Compliance report KO-17-04-0033)].

Following the receipt of the complaint, Defendant initiated an investigation, speaking with Plaintiff's co-workers, Patrick Thomas, Ahmed Hernandez and Sheldon Davis – all of whom indicated that they had observed certain conduct of Plaintiff following the pre-shift meeting. [Def. 56(a)(1) ¶ 6]. Employees Sheldon Davis and Ahmed Hernandez submitted written statements stating that Plaintiff purposely bumped into Mr. Hernandez and Thomas Patrick and threatened further physical contact. [Def. 56(a)(1) ¶ 7]. The employees' statements are inconsistent about the threatening language Plaintiff allegedly used. [*Ibid*.]. Plaintiff admits that he told Defendant that he walked between Mr. Hernandez and Mr. Patrick and that he said, "Next time, I will move you," but denies that he charged at them. [Def. 56(a)(1) ¶¶ 9-10]; [Pl. 56(a)(2) ¶¶ 9]. When asked what Defendant meant by the statement, he said, "I'll push him out of the way or something." [Def. 56(a)(1) ¶ 11].

4

Plaintiff was terminated on June 8, 2017. The basis for his termination was threatening "harm or willful threat of harm to persons…" pursuant to the CBA. [Def. Ex. B, App. 10 (Arbitration Award) at 12)]. Plaintiff's termination letter states, in relevant part, that:

> …effective immediately, your employment with the Company is terminated pursuant to Article VII, Section 3 of the [CBA]…
>
> We have concluded, after investigation, that, on April 20, 2017, you walked in an aggressive manner toward two of your co-workers. You walked directly toward and between the two co-workers, bumping your shoulders into the shoulder of both men. In addition, you admitted to making a threatening comment to the co-workers.

[Def. Ex. B App. 6 (Pl. Termination Ltr.)]

Plaintiff filed a grievance, which proceeded to arbitration in September 2017. [Def. 56(a)(1) ¶ 15]. After considering sworn testimony from witnesses and viewing a videotape (without audio) of the incident, the arbitrator concluded that it was clear from the video that Plaintiff did not contact Mr. Thomas at all and any contact with Mr. Hernandez consisted only of incidental brushing. [Def. Ex. B, App. 10 (Arbitration Award) at 5)]. The arbitrator found that Mr. Davis's written statement claiming that Plaintiff made a long menacing statement was uncorroborated. [*Id.* at 10]. The arbitrator further found that the "…Company's witnesses are remarkably inconsistent with one another about what was supposedly said by Donaldson, and when he supposedly made whatever statement they claim he made." [*Id.* at 11]. The arbitrator held that Defendant did not carry its contractual burden of providing that it had just cause to summarily terminate Defendant due to "harm or willful threat of harm to persons…" pursuant to the CBA. [*Id.* at 12]. Consequently, Plaintiff's termination was converted to a written warning for his inappropriate

5

statement that he would push past co-workers in the future, and he was awarded full backpay. [*Id.* at 12-13]. The parties implemented the arbitrator's award without issue. [Def. 56(a)(1) ¶¶ 18-21].

Around the time Plaintiff was terminated, Defendant learned that Jon Zelaya was consuming products placed in the "damage pile," which were slated for disposal. [Def. 56(a)(1) ¶ 26]. Mr. Zelaya believed that the products were available for consumption. [Def. 56(a)(1) ¶ 27]. Although his actions were contrary to company policy, there was confusion at the facility concerning whether consumption of these products was permissible. [Def. 56(a)(1) ¶ 28]. In late April 2017, Mr. Zelaya was issued a written warning for his actions. [Def. 56(a)(1) ¶ 29].

## Legal Standard for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson*, 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

6

U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted). "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson*, 477 U.S. at. 248. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## Discussion

1. **Parties' Arguments**

Defendant moves for summary judgment on Plaintiff's state law racial discrimination claim on the basis that Plaintiff cannot establish a prima facie case of discrimination because Plaintiff's two proposed comparators, Ms. Fontanez and Mr. Zelaya, are not similarly situated to Plaintiff. [Dkt. 28 (Def. Mem. in Supp. of Mot. for Summ. J) at 4-8]. Defendant moves for summary judgment on Plaintiff's retaliation claim on the basis of the temporal proximity between Plaintiff's protected activity-complaining about the use of racially derogatory language- and his termination. [*Id.* at 8-10]. Lastly, Defendant argues that Plaintiff has not rebutted Defendant's proffered legitimate basis for his termination by establishing that the proffered basis was a pretext for discriminatory or retaliatory motives. [*Id.* at 10-15].

In opposition, Plaintiff argues that whether the two comparators are similarly situated is a question of fact. [Dkt. 32 (Pl. Mem. in Opp'n. Summ. J.) at 14-16]. Plaintiff argues that a juror could reasonably determine that the Defendant's explanation for the termination is pretextual because of Mr. Grady's erroneous conclusions about the events following the pre-shift meeting. [*Id.* at 17-19]. Plaintiff argues that the causal connection between his protected activity and termination can be establish by the proximity of events, coupled with Mr. Grady's knowledge

of his protected activity and false conclusions about Plaintiff's misconduct. [*Id*. at 21-23].

Defendant's reply brief argues that Mr. Zelaya is not similarly-situated to Plaintiff because he did not know that he was forbidden from consuming products in the "damage pile." [Dkt. 33 (Def. Repl. Br.) at 1-2]. Defendant argues that both Ms. Fontanez and Plaintiff were returned to work through their union's efforts and Plaintiff did not previously complain about Ms. Fontanez's use of threatening language, supported by declarations from Mr. Grady and Ms. Barney. [*Id*. at 3, n.2-3]. Defendant argues that, although the arbitrator disagreed with the Defendant's interpretation of the events and termination decision, it does not establish that intentional retaliation or discrimination occurred. [*Id*. at 5-6].

2. <u>Discrimination and retaliation under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat § 46a-60, *et seq*.</u>

Retaliation and disparate treatment discrimination claims under Connecticut law are assessed under Title VII's familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its progeny. *Feliciano v. Autozone, Inc.*, 316 Conn. 65, 73 (2015)(discrimination); *Jones v. Dep't of Children & Families*, 172 Conn. App. 14, 35 (2017)(retaliation). The analysis is the same under both state and federal law. *Feliciano*, 316 Conn. at 73.

In order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that

give rise to an inference of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. The causation prong of the prima facie case may be established "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Plaintiff's burden to establish a prima facie case is "minimal" and "*de minimis*." *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)

Thereafter, there is a presumption of retaliation or discrimination that the defendant must rebut by articulating "a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "[T]he plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prod.*, Inc., 530 U.S. 133, 143 (2000).

3. <u>**Whether Plaintiff can establish a prima facie case of discrimination.**</u>

The parties agree that Plaintiff is a member of a protected class, that he was minimally qualified for the position, and that he experienced adverse action: the sole issues are whether the adverse employment action occurred under

10

circumstances that give rise to an inference of discrimination and whether Plaintiff can establish pretext.

As discussed *supra*, Plaintiff's inferential theory of discrimination is that Ms. Fontanez and Mr. Zelaya, neither of whom are Black, were similarly situated to Plaintiff, but treated more favorably. "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). The comparators must be "similarly situated in all material respects." *Ibid.* (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). What constitutes "all material respects … must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer-imposed discipline was of comparable seriousness," *Id.* at 40. This is an objective standard of comparability. *Id*. The allegedly similarly situated person's conduct need not be identical to the plaintiff's but must have "a reasonably close resemblance." *Id*. Although "similarly situated" is generally a question of fact for the jury, a court can make the determination on a motion for summary judgment if the plaintiff fails to raise a genuine issue of material fact. *Id*. at 39. *See, e.g. Woods v. Newburgh Enlarged City Sch*. Dist., 288 F. App'x 757, 760 (2d Cir. 2008)(probationary and permanent employees not similarly situated, permanent employees' breach of confidentiality distinguishable where comparators submitted grades on postcards but Plaintiff directed the copying of voluminous records).

Here, Plaintiff can readily establish the first prong of the "material respects" test because a reasonable factfinder could infer that all of the warehouse employees were subject to the same workplace standards set forth in the CBA and managed by Mr. Grady.

However, aside from the factual dissimilarity between Plaintiff's conduct and Mr. Zelaya's, Plaintiff concedes that there was confusion as to the company's policy regarding the handling of damaged products. *See* [Dkt. 32 (Pl. Mem. in Opp'n Summ. J.) at 12]. Plaintiff characterizes Mr. Zelaya's actions as "theft," which is a terminable offense under Defendant's rules and regulations for union-represented employees. [Dkt. 32 (Pl. Mem. in Opp'n Summ. J.) at 13]; [Pl. Ex. 4 (Rules and Regs.) at 6]. Theft, both in the legal sense and in common parlance, involves the *wrongful* taking of another's property. THEFT, Black's Law Dictionary (11th ed. 2019). The wrongfulness of Mr. Zelaya's conduct is conspicuously absent because the material he took had been discarded. Accordingly, there is no genuine issue of material fact as to whether Mr. Zelaya is similarly situated to Plaintiff.

By comparison, Plaintiff adduces admissible evidence that Ms. Fontanez is similarly situated to Plaintiff and his outside of his protected class but was treated more favorably.  Defendant argues that, "[s]uccinctly, without intending to diminish the gravity of Ms. Fontanez's inappropriate word choice, her conduct bore no resemblance to the misconduct of Plaintiff.  Again, Plaintiff's conduct (as reported by his co-workers) implicated both present threats/acts of violence and future acts of violence.  Ms. Fontanez's statement, on the other hand, reflected nothing more than bigoted ignorance." [Dkt. 28 (Def. Mem. in Supp. Summ. J.) at 6-7]. Defendant

12

further argues that the comparison is flawed *ab initio* because both Ms. Fontanez and Plaintiff were initially terminated and then reinstated through efforts of their union. *Id.* at 7. The Court disagrees.

Here, there are disputed facts as to whether Plaintiff told Mr. Grady about Ms. Fontanez's verbal threat accompanying her use of the racial epithet directed at Plaintiff. *See supra.* pp. 3. The parties agree that Plaintiff complained that Ms. Fontanez tried to intentionally hit his car while they exited the parking lot at the time Ms. Fontanez was under investigation for harassing Plaintiff on account of his race. *Id.* Plaintiff's testimony casts doubt on the veracity of Mr. Grady's conclusions about what transpired in the parking lot. [Pl. Ex. A (Donaldson Depo.) 75:14-75:22] ("He [Mr. Grady] says that on camera it doesn't look like she was intentionally trying to hit my car, it looked like I might have been telling her she could go in front of me. Which my windows are tinted so I don't know how you could see that at 2:00 in the morning.").

After his complaints about the racial epithet and the parking lot incident, Plaintiff again complained that Ms. Fontanez made unwanted physical contact with him, which was verified by Ms. Fontanez's complaint about the incident. Aside from these factual similarities, Mr. Grady determined that the conduct of both parties, as he understood it, warranted termination without intermediate disciplinary action available through the CBA. This could be reasonably interpreted by a jury to suggest that Plaintiff was treated more harshly for a single instance of similar conduct compared to Ms. Fontanez, who engaged in repeated threatening behavior, accompanied by personally targeted racial bigotry. *See supra.* pp.3.

13

While Plaintiff appears to have been ultimately placed in a better financial position than Ms. Fontanez by virtue of his reinstatement with full back pay in addition to his substitute income, Defendant voluntarily re-employed Ms. Fontanez, only a few days after her termination. In contrast, Defendant did not voluntarily reemploy Plaintiff.  Defendant was contractually compelled to reemployed Plaintiff after an arbitration award, seven months later. Plaintiff was unemployed for two months. [Def. 56(a)(1) ¶ 20]. Put another way, Defendant was not willing to afford Plaintiff a second chance for qualitatively similar, and arguably worse, misconduct and his complaints were given less credence.

Consequently, the Court concludes that Plaintiff has satisfied the minimal showing necessary to establish a prima facie case of discrimination to survive summary judgment. [Dkt. 32 (Pl. Mem. in Opp'n. Summ. J.) at 14-16].

4. <u>Whether Plainitff can establish pretext.</u>

Plaintiff does not dispute that Defendant satisfied its burden to proffer a legitimate, non-discriminatory basis for his termination. *See* [Dkt. 32 (Pl. Mem. in Opp'n. Summ. J.) at 14-16]. Thus, whether Plaintiff's racial discrimination claim survives summary judgment hinges on whether Plaintiff can establish that Defendant's proffered basis for his termination is pretextual for racially discriminatory motives.

"Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without

more*." Percoco v. Lowe's Home Centers, LLC*, 208 F. Supp. 3d 437, 444 (D. Conn. 2016).

Here, the Court finds that the arbitrator's decision is helpful in considering the totality of the information available to Mr. Grady at the time of the termination and whether Plaintiff can reasonably show that Mr. Grady's decision was motivated by Plaintiff's race. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), the U.S. Supreme Court held that employees who first submit their employment claims to arbitration are still entitled to a trial *de novo* on Title VII claims. "Although presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement, mere resort to the arbitral forum to enforce contractual rights constitutes no such waiver. Since an employee's rights under Title VII may not be waived prospectively, existing contractual rights and remedies against discrimination must result from other concessions already made by the union as part of the economic bargain struck with the employer." *Id.* at 52. In reaching this conclusion, the Court expressly declined to adopt a particular standard as to the weight to be afforded an arbitration decision, if any, leaving the issue to the discretion of the courts "with regards to the facts and circumstances of each case." *Id.* at 60, n. 21.

In this case, rather than addressing whether Plaintiff actually engaged in conduct alleged or whether this misconduct satisfied the employer's contractual burden of establishing "just cause" under the CBA, the arbitrator's decision is useful in gauging whether Defendant's conclusion about the events is "unworthy of credence" and therefore pretextual for discrimination. The arbitrator, who like

Mr. Grady viewed the video, found that "the video is entirely clear that Donaldson did not bump both Thomas and Hernandez "in a violent manner almost knocking both men off balance." Def. Ex. B, App. 10 (Arbitration Award) at 9]. Similarly, the written statements from the employee-witnesses considered by Mr. Grady at the time of the termination and by the arbitrator are themselves inconsistent about what Plaintiff allegedly said. See [Def. 56(a)(1) ¶ 7](excerpting statements from Mr. Thomas and Mr. Hernandez). The arbitrator concluded that Mr. Hernandez's statement was untruthful when he compared it to the video. [Def. Ex. B, App. 10 (Arbitration Award) at 11, n .2 and 12, n. 3].

The Court agrees with Defendant that "an employer's good faith belief that an employee engaged in misconduct is a legitimate reason for terminating her, and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." *Droutman v. New York Blood Ctr., Inc.*, No. 03-CV-5384(DRH/ARL), 2005 WL 1796120, at *9 (E.D.N.Y. July 27, 2005)(citations omitted); *Messinger v. JPMorgan Chase Bank, N.A.*, 126 F. Supp. 3d 376, 384 (S.D.N.Y. 2015)(same). Here, given the wide dissonance between the arbitrator's and Mr. Grady's view of the factual circumstances from the same evidence, coupled with the differential treatment of qualitatively similar conduct by Ms. Fontanez, a reasonable fact finder could find that the termination was motivated by racial bias. These facts reach beyond conclusory allegations that are insufficient to establish pretext. *Compare to Bryant v. Delphi Auto. Sys. Corp.*, No. 08-CV-6215, 2010 WL 1063740, at *6 (W.D.N.Y. Mar. 22, 2010); *Nieves v. Avalonbay Communities, Inc.*, No. 306CV00198DJS, 2007 WL 2422281, at *8 (D. Conn. Aug. 23, 2007).

Therefore, Defendant's motion for summary judgment as to Plaintiff's claim for racial discrimination is denied.

5. <u>**Whether Plaintiff establishes a prima facie case of retaliation.**</u>

Although the Court finds that Plaintiff's racial discrimination claim survives summary judgment, the Court must dismiss Plaintiff's retaliation claim because Plaintiff cannot establish a prima facie case. Plaintiff and Defendant conversely argue that the temporal proximity between Plaintiff's protected activity and his termination support their respective positions. On this point, the Defendant prevails.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, (10th Cir. 2001)(citing e.g. *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (3–month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (4–month period insufficient)).

Although the Second Circuit has not adopted a bright line rule, *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001), it has held that the lapse of five months between protected activity and the adverse action is insufficient to show causality to establish a prima facie case without more. *Chamberlin v. Principi*, 247 F. App'x 251, 254 (2d Cir. 2007) (Chamberlin's

17

assignment to unit 4CD—occurred five months after the filing of the second EEOC complaint, an interval the district court properly concluded was not "close.").

Apart from the insufficient temporal proximity of seven months between Plaintiff's protected activity in November 2016 and his termination in April 2017, he does not adduce any additional evidence suggestive of a retaliatory motive during the interim period, such as a change in his working conditions or remarks by management that are reasonably indicative of a retaliatory motive. Because an employer's knowledge of protected activity is a necessary but not a sufficient condition for establishing a prima facie claim of retaliation, the fact that Mr. Grady also knew about Plaintiff's protected activity cannot establish causation without more.

Therefore, the Court grant's Defendant's motion for summary judgment as to Defendant's retaliation claim.

## Conclusion

For the aforementioned reasons, the Court grants in part and denies in part Defendant's motion for summary judgment.

                                            IT IS SO ORDERED

                                            /s/

                                            Hon. Vanessa L. Bryant
                                            United States District Judge

Dated at Hartford, Connecticut: May 19, 2020